```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MARIAM ANGELIY ORLANDI an infant,    :
by her mother and natural guardian   :
MARIA I. COLON and MARIA I. COLON,   :
individually,                        :
                      Plaintiffs,    :
                                     :  09 Civ. 4855 (THK)
          -against-                  :
                                     :  MEMORANDUM OPINION
NAVISTAR LEASING CO., GROCERY        :
HAULERS, INC., and DENNIS VAETH,     :
                                     :
                                     :
                      Defendants.    :
------------------------------------X
```



**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Plaintiff Maria I. Colon, acting as the legal guardian of her infant daughter, Mariam Angeliy Orlandi ("Mariam"),[1] brought this action for injuries sustained in a motor vehicle accident which occurred on July 23, 2008. After completing pretrial discovery, the parties participated in a full-day mediation, which took place before retired Judge William C. Thompson. The mediation resulted in a final offer by Defendants in resolution of Mariam's claims in the amount of $1.5 million, inclusive of attorneys' fees and costs. Pursuant to the settlement agreement, and consistent with a

---

[1] Although actions brought in the name of a minor should identify the minor only by her initials, see Fed. R. Civ. P. 5.2(a), this case was filed in 2009 with the infant Plaintiff's full name in the caption and throughout the Complaint. There is little point, therefore, in the Court's referring to the infant Plaintiff merely by her initials. See Fed. R. Civ. P. 5.2(h) ("A person waives the protection of Rule 5.2(a) as to the person's own information by filing it without redaction and not under seal.").

retainer agreement entered into with counsel, Plaintiff's attorney is to receive one-third of the settlement ($500,000), and the remaining one million dollars is to be invested in a structured settlement annuity which, commencing in 2013, when Mariam is eighteen years old, will pay her monthly amounts in addition to certain lump sum amounts at various periods in her life.

A Proposed Infant's Compromise Order was submitted to the Court (Hon. Deborah A. Batts, U.S.D.J.) for approval, and the matter was referred to this Court for an Infant Compromise Hearing and Report and Recommendation on whether the settlement is fair, reasonable, and in the best interests of the infant. See Local Civil Rule 83.2(a) of the Southern District of New York; N.Y. C.P.L.R. Rule 1208.

A hearing was held on July 25, 2011, after which the parties consented to proceed before this Court for all purposes, pursuant to 28 U.S.C. ¶ 636(c). Having considered the papers submitted in support of the settlement and the evidence adduced at the hearing, for the reasons that follow the Court concludes that the settlement is fair, reasonable, and in the best interests of the infant Plaintiff.

**BACKGROUND**

On July 23, 2008, Mariam and her grandmother were being driven to the airport by Mariam's uncle, for a planned trip to Puerto

Rico.  On the way to the airport, the vehicle experienced mechanical problems and the uncle drove it into the breakdown lane of the eastbound Cross Bronx Expressway.  He left the vehicle and the two passengers in order to get assistance.  Shortly thereafter, a tractor trailer owned and operated by Defendants crashed into the rear of the disabled vehicle.  The tractor trailer pushed the car several hundred feet.  Mariam's grandmother was ejected from the vehicle and violently killed.  Mariam witnessed her grandmother's screams just prior to her death and saw the gruesome corpse following the incident.  Mariam herself was not seriously injured.  She was taken to Jacobi Hospital with complaints of pain in her shoulder and leg.  She was treated and released and did not receive any further medical treatment for her injuries. (See Affirmation of Joseph G. Macaluso, dated May 3, 2011 ("Macaluso Aff."), ¶¶ 3-6.)  Mariam did, however, experience disturbing thoughts and flashbacks about the accident and her grandmother's death.  She was seen at Northeast Community Mental Health and Health Center in Philadelphia, Pennsylvania.  She had complaints of anxiety, depression, and flashbacks. (See id. ¶¶ 7-8.)[2]

On August 10, 2008, the firm of Macaluso & Fafinski, P.C., was retained by the infant's mother, to represent the infant Plaintiff

---

[2] Mariam had received prior treatment at the Center for depression and attention deficit disorder.

3

in connection with the motor vehicle accident. (See id. ¶ 10.) The accident was thoroughly investigated and witnesses were interviewed. An action was commenced in the Bronx County Supreme Court, on behalf of Mariam, and it was subsequently removed to this Court. Pretrial discovery was essentially completed, including party and witness depositions. In addition, a psychiatric expert was retained to examine Mariam and render a report on the psychiatric impact the accident had on Mariam. (See id. ¶¶ 11-12.) The expert, Dr. Alberto M. Goldwaser, concluded in his report that Mariam suffered post-traumatic stress disorder but, "although still afflicted in the aftermath of the motor vehicle accident of July 23, 2008, [Mariam] presently demonstrates ability to cope with the loss and trauma experienced." (Affirmation of Alberto M. Goldwaser, dated April 11, 2011, ¶ 8.) Plaintiff is not currently under treatment for accident related trauma.[3]

On March 21, 2011, a full-day mediation was held before retired Judge William C. Thompson, and, ultimately, Defendants made a $1.5 million offer to resolve the infant Plaintiff's claims.

## DISCUSSION

---

[3] Another psychiatrist, Dr. William B. Head, retained by Defendants, performed a psychiatric consultation and evaluation of Mariam, and concluded that Mariam suffered from some depression due to her grandmother's and father's deaths, but she had an otherwise normal psychiatric examination and no psychiatric care is now required. (See Ex. F to Macaluso Aff.)

I. <u>Applicable Law</u>

Local Civil Rule 83.2(a)(1) of the Southern District of New York requires that any "action by or on behalf of an infant . . . shall not be settled or compromised, or voluntarily discontinued, without leave of the Court embodied in an order, judgment, or decree." The Rule further requires that any proceeding to settle such an action "shall conform, as nearly as may be, to the New York State statutes and rules." Local Civil Rule 83.2(a)(1). The New York procedures for settling a case on behalf of an infant are set forth in N.Y. C.P.L.R. Rule 1208. Under that Rule, affidavits are required from the infant's representative and attorney, setting forth, <u>inter alia</u>, the terms of the settlement, the circumstances giving rise to the action or claim, the extent of the damages sustained by the infant as documented in medical or hospital records, and reasons for recommending the settlement. <u>See</u> N.Y. C.P.L.R. § 1208 (McKinney 1997). Substantively, "[i]n exercising its discretion [to approve a settlement compromising an infant claim], the district court's focus is to determine whether a proposed settlement is fair, reasonable, and adequate, by comparing the terms of the compromise with the likely rewards of litigation." <u>Neilson v. Colgate-Palmolive Co.</u>, 199 F.3d 642, 654 (2d Cir. 1999) (quoting <u>Maywalt v. Parker & Parsley Petroleum Co.</u>, 67 F.3d 1072, 1079 (2d Cir. 1995)) (internal quotation marks omitted); <u>see also</u>

5

J.A. ex rel. Atkins v. Ja-Ru, Inc., No. 08 Civ. 3640 (DAB)(KNF), 2011 WL 990167, at *2 (S.D.N.Y. Mar. 15, 2011) (Report and Recommendation, adopted on March 17, 2011). A strong presumption exists that a settlement is fair and reasonable where "(i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently." Ross v. A.H. Robins Co., Inc., 700 F. Supp. 682, 683 (S.D.N.Y. 1988) (internal citations and quotation marks omitted). Moreover, courts give significant deference to a guardian's view that the settlement reached is fair and reasonable to an infant plaintiff. See J.A. ex rel. Atkins, 2011 WL 990167, at *3; Stephen v. Target Corp., No. CV-08-338 (CPS)(JG), 2009 WL 367623, at *3 (E.D.N.Y. Feb. 12, 2009); Stahl v. Rhee, 220 A.D.2d 39, 46, 643 N.Y.S.2d 148, 153 (2d Dep't 1996) (noting that "[i]n a case where reasonable minds may legitimately differ, the judgment of the infant's natural guardian should prevail").

II. Reasonableness of the Settlement

    A. Overall Settlement

Under the settlement agreement, Defendants will pay $1.5 million, inclusive of attorneys' fees. As a total settlement, this amount is eminently fair and reasonable and in the best interests

of the infant Plaintiff. First, the settlement was negotiated at arms length and under the supervision of a retired New York Supreme Court judge. Moreover, the settlement was reached after there had been full discovery. Counsel and the infant's mother, therefore, had sufficient facts and information to make an informed decision about the settlement and its reasonableness. It is also apparent that Plaintiff's counsel thoroughly investigated and developed Plaintiff's case and that the settlement is not merely a shortcut to the award of attorneys' fees. Both Mariam and her mother have stated in their affidavits and hearing testimony that they were fully satisfied with their counsel's representation and they, along with counsel, agree that the settlement is fair, reasonable, and in the best interests of Mariam.[4]

Finally, taking into consideration the risks of litigation, there is a strong likelihood that Mariam would not have received such a generous recovery had she gone to trial. Although the accident she experienced, and viewing her grandmother die, were, no doubt, traumatic, fortunately Mariam did not sustain any significant physical injury. Moreover, according to the expert psychiatrist who interviewed her, she appears to be functioning well psychologically. Having spoken to Mariam at the hearing, that

---

[4] Mariam is now 16 years old.

7

is the Court's perception as well.

For all of the above reasons, I conclude that the payment of $1.5 million to resolve Plaintiff's claims against Defendants is reasonable and in the best interests of the infant Plaintiff.

B. Reasonableness of the Proposed Structure

A structured settlement has been proposed for the investment of $1 million on behalf of Mariam, which the Court also reviews for fairness and reasonableness.

Plaintiff's counsel retained the firm, Plaintiff Solutions, to research the most beneficial terms for the purchase of an annuity for Mariam with the portion of the settlement that will remain after the payment of attorney's fees. A representative of the firm testified at the hearing, where he stated that after the infant's mother chose a structure that she thought was most suitable for the infant Plaintiff, he sought bids from 14 different insurance companies. They chose a highly rated and fiscally sound company — the Metropolitan Insurance Company — which offered the best possible rate. (See Macaluso Aff. Exs. A, B, and C; Hearing Tr., dated July 25, 2011, at 8-9.) Under the terms of the annuity, Mariam will receive a fixed sum of $30,000.00 for each of four years commencing at her 18th birthday (June 9, 2013), in order to cover the costs of a college education. For the same four years she will also receive a monthly benefit of $2,000.00. Commencing

8

at the age of 22, Mariam will then receive a monthly benefit of $3,500.00, for life, with 30 years certain. Finally, Mariam will receive lump sum payments of $50,000.00 at the age of 25, $100,000.00 at the age of 30, and $153,667.48 at the age of 35. The approximate triple tax free internal rate of return on the annuity is 4.64%.[5] Based on these terms, the certain payout under the annuity is $1,779,687.00, and, based on Mariam's normal life expectancy, the payout will be $3,249,687.00. (See Macaluso Aff. Ex. A.)

The Court concludes that the structured settlement is reasonable and in the best interests of the infant Plaintiff. It will provide her with enough money to pursue a higher education, provide her with a monthly annuity for her living expenses, and, at various points in her life, will provide lump sum payments that will allow for such things as purchasing a home. The rate of return on the annuity of 4.6% is reasonable.[6]

---

[5] The rate of return is a means of calculating the present value of the annuity by discounting the value of the future award payments. Discounting accounts both for inflation, the tendency of money to decrease in future purchasing power over time, and the recipient's loss of opportunity to invest and earn interest on a payment received in the present rather than in the future. See Allen v. Robert's Am. Gourmet Food, Inc., No. 07 Civ. 2661 (NGG)(ETB), 2009 WL 2951980, at *11-12 (E.D.N.Y. Sept. 8, 2009) (citing Oliveri v. Delta Steamship Lines, Inc., 849 F.2d 742, 745-46 (2d Cir. 1988)).

[6] At present, short and long-term Treasury bonds are yielding substantially lower rates.

C. <u>Attorneys' Fees</u>

Plaintiff's counsel seeks the award of $500,000.00 in attorneys fees, inclusive of the costs incurred in the litigation.[7] The retainer agreement calls for a one-third contingency fee. (<u>See</u> Macaluso Aff. Ex. H .)

Under New York law, "the compensation of an attorney is governed by contract," except where a contingency fee agreement is entered into on behalf of an infant. New York Judiciary Law ¶ 474 (McKinney's 2005). When a contingency agreement is entered into by a guardian for an infant, the attorney must apply to the court before which a compromise was reached for the award of attorneys' fees. The court must then determine the "suitable compensation" for the attorney, "taking such proof from either the attorney or the guardian by affidavit, reference or the examination of witnesses before said court . . . as may seem to be necessary and proper." <u>Id.</u>; <u>see also</u> Local Civil Rule 83.2(a)(2) ("The Court shall authorize payment to counsel for the infant . . . of a

---

[7] Plaintiff's counsel's out-of-pocket costs were approximately $10,000.00. Of that sum, $7,000-$8,000 was paid to the psychiatrist who was retained to examine the infant Plaintiff and issue an expert report. (<u>See</u> Hearing Tr. at 22.) In addition, there were filing fees, travel costs (Plaintiffs reside in Philadelphia, where counsel visited them on a number of occasions; an eyewitness who lives in North Carolina was deposed); and deposition transcript fees. Plaintiffs themselves did not incur out-of-pocket expenses in the litigation.

reasonable attorney's fee and proper disbursements from the amount recovered in such an action, whether realized by settlement, execution or otherwise and shall determine the said fee and disbursements, after due inquiry as to all charges against the fund."). "This requirement arises from the court's duty to protect infants and other wards of the court." White v. DaimlerChrysler Corp., 57 A.D.3d 531, 533, 871 N.Y.S.2d 170, 173 (2d Dep't 2008).

Although the infant Plaintiff and her mother have agreed to the amount of fees requested, their agreement is "advisory only." See Stephen, 2009 WL 367623, at *3; Mateo v. United States, No. 06 Civ. 2647 (KNF), 2008 WL 3166974, at *4 (S.D.N.Y. Aug. 6, 2008); cf. White, 57 A.D.3d at 534, 871 N.Y.S.2d at 173 ("The contract . . . between the attorney and guardian . . . [is] one of the elements which the judge may take into consideration in fixing the reasonable compensation."). Other factors to be considered are: "(1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented, (2) the attorney's experience, ability, and reputation, (3) the amount involved and the benefit flowing to the ward as a result of the attorney's services, (4) the fees awarded in similar cases, (5) the contingency or certainty of compensation, (6) the results obtained, and (7) the responsibility involved." In re Catherine K., 22 A.D.3d 850, 851-52, 803 N.Y.S.2d 193, 194 (2d Dep't 2005); see

also Jurdine v. City of New York, No. 07 Civ. 2915 (JO), 2008 WL 974650, at *3 (E.D.N.Y. Apr. 8, 2008).

The Court concludes that a fee of $500,000.00 (one-third of the recovery) is reasonable. First, the infant Plaintiff's guardian and the infant Plaintiff herself have agreed to this amount and confirm that they were ably represented by their counsel. Second, Plaintiff's counsel secured a very favorable settlement for the infant Plaintiff. Third, Plaintiff's counsel has over twenty years of experience in the field. Fourth, counsel put substantial time and effort into the representation. He conducted a thorough investigation prior to filing the action; interviewed witnesses who gave statements as part of the accident investigation; did legal research on numerous issues including jurisdiction, forum selection, damage awards where there was no physical injury, zone of danger, the Federal Motor Safety Act, and bankruptcy (the Defendant-driver filed for bankruptcy during the course of this action); interviewed Plaintiff's psychiatrist and therapist and reviewed extensive psychiatric records; retained a psychiatric expert, spent time with the expert and the infant Plaintiff, and reviewed the expert's report; retained an accident recreation expert to address the driver-Defendant's contention that the accident occurred when he sneezed and his eyeglasses flew off; reviewed the transcript of a state hearing on the accident and

12

interviewed the police and other witnesses; conducted full discovery, including an out-of-state deposition of a witness, depositions of the infant Plaintiff and her mother, as well as the defendant; traveled to Philadelphia on a number of occasions to meet with Plaintiff and her mother; spent the entire day at the infant Plaintiff's interview by Defendants' psychiatric expert; and prepared for and participated in a full-day mediation. (See Hearing Tr. at 1-22.) Finally, contingency awards of one-third of the recovery are common in similar cases. See, e.g., Stephen, 2009 WL 367623, at *4; Jurdine, 2008 WL 9746450, at *4; Barretta v. NBKL Corp., 298 A.D.2d 539, 540, 748 N.Y.S.2d 669(2d Dep't 2002); Borgia v. City of New York, 42 Misc.2d 924, 925 249 N.Y.S.2d 241, 243 (N.Y. Sup. Ct. Kings Cty. 1963).

## CONCLUSION

For the foregoing reasons, the Court concludes that the settlement reached on behalf of the infant Plaintiff is fair and reasonable, that the structured settlement is reasonable and advantageous to the infant Plaintiff, and that a fee award of $500,000 is fair and reasonable. The Court will, therefore, enter the Infant's Compromise Order that has been submitted to the Court.

```
                              _____
                              THEODORE H. KATZ
                              United States Magistrate Judge




Dated: September 2, 2011
       New York, New York
```